# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| TRACY TORRIS HUNT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | CASE NO. 4:13-cv-02081-JEO |
| ) | |
| CAROLYN W. COLVIN, Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

Plaintiff Tracy Torris Hunt brings this action pursuant to 42 U.S.C. § 405(g), seeking review of the final decision of the Acting Commissioner of Social Security ("Commissioner") denying his applications for disability insurance benefits and supplemental security income ("SSI"). (Doc. 1).[1] He also requests that the court remand this matter to the Administrative Law Judge ("ALJ") pursuant to sentences four and six of 42 U.S.C. § 405(g). The case has been assigned to the undersigned United States Magistrate Judge pursuant to this court's general order of reference dated January 14, 2013. Upon review of the record and the relevant law, the undersigned finds that the Commissioner's decision is due to be affirmed and that Hunt's requests for a remand is due to be denied.

### I. PROCEDURAL HISTORY

Hunt filed applications for disability insurance benefits and SSI in June 2010, alleging

---

[1] References herein to "Doc(s). __" are to the document numbers assigned by the Clerk of the Court to the pleadings, motions, and other materials in the court file, as reflected on the docket sheet in the court's Case Management/Electronic Case Files (CM/ECF) system.

1

disability beginning March 27, 2009, due to back problems and depression. (R. 176).[2] His claims were denied initially. He then requested a hearing before an Administrative Law Judge ("ALJ"), which was held on April 10, 2012. (R. 37-79). Hunt was represented by counsel at the hearing. (R. 10). On June 19, 2012, the ALJ issued his decision finding that Hunt was not entitled to any disability benefits. (R. 10).

Hunt requested that the Appeals Council review the ALJ's decision. The Appeals Council denied his request for review on September 10, 2013. (R. 1). On that date, the ALJ's decision became the final decision of the Commissioner. Hunt then filed this action for judicial review under 42 U.S.C. § 405(g), asserting that the findings of the Commissioner were not based upon substantial evidence and were not determined by proper legal standards. (Doc. 1).

## II.  STANDARD OF REVIEW[3]

The court's review of the Commissioner's decision is narrowly circumscribed. The function of the court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390, 91 S. Ct. 1420, 1422 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

---

[2] References to "R. __" are to the page number of the administrative record, which is encompassed within Docs. 5-1 through 5-8.

[3] In general, the legal standards applied are the same whether a claimant seeks disability insurance benefits or SSI. However, separate, parallel statutes and regulations exist for disability insurance benefits and SSI claims. Therefore, citations in this report should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations for statutes or regulations found in quoted court decisions.

Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

The court must uphold factual findings that are supported by substantial evidence. However, it reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

### III.  STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[4] The Regulations define being "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled.

---

[4]The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499, revised as of April 1, 2007.

20 C.F.R. §§ 404.1520(a)(4)(i-v) and 416.920(a)(4)(i-v).  The Commissioner must determine in sequence:

      (1)  Is the claimant presently unemployed;

      (2)  Is the claimant's impairment severe;

      (3)  Does the claimant's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. pt. 404, subpt. P, app. 1 [the "Listings"];

      (4)  Is the claimant unable to perform his or her former occupation;

      (5)  Is the claimant unable to perform any other work within the economy?

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir.1986).  An affirmative answer to any of the above questions leads either to the next question or, at steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of "not disabled."  *Id.; see* 20 C.F.R. §§ 404.1520 and 416.920.

## IV.  THE ADMINISTRATIVE PROCEEDINGS

      Hunt was 45 years old at the time of the ALJ's decision.  (R. 147).  He has a limited education having completed only the eighth grade in special education classes.[5]  (R. 290).  He has past relevant work experience as a lumber stacker and live poultry hanger.  (R. 26, 182, 290).  In his next to last position, he was "pulling slabs" and lifting heavy objects for about 21 years.  (R. 59-60).  He complains he is in significant pain, and that contributes to his heavy drinking.  (R. 61-63).

      The ALJ found that Hunt has the severe impairments of "degenerative joint disease of the hips; mild to moderate spondylosis of the lumbar spine; alcohol dependence; alcohol-inducted

---

      [5]He was expelled while in the ninth or tenth grade due to disciplinary problems.  (R. 290).

psychosis; and low borderline intellectual functioning secondary to ongoing alcohol abuse, evidenced by a full scale IQ of 51 while suffering from alcohol-induced psychosis, without evidence of deficits in adaptive functioning when he is not abusing alcohol." (R. 21). He further found that Hunt's severe impairments would not meet or medically equal any listed impairments. (R. 21). The ALJ determined that Hunt had the residual functional capacity to perform light work with limitations. (R. 26). He concluded that Hunt could not perform his previous work or other work in the national economy due to his situation, "including his alcohol abuse and dependence an alcohol-inducted psychoses." (R. 27). He further concluded that if Hut stopped abusing alcohol, he would continue to have severe impairments, but they would not meet or medically equal any listed impairment and would have only a minimal impact on his ability to perform basic work activities. (R. 27). The ALJ found that if he stopped abusing alcohol, Hunt would be able to perform in positions such as cleaner, packer, dishwasher/food preparer, gate guard, ticket seller, automated machine operator and product inspector. (R. 31, 65-69). Finally, the ALJ concluded that Hunt's alcohol abuse/dependence was "a contributing factor material to the determination of his disability," that "he would not be disabled if he were to stop abusing alcohol," and that he has not been disabled under the Act from his alleged onset date through the date of the decision. (R. 32).

## IV. ANALYSIS

Hunt urges the court to reverse the Commissioner' decision or remand this matter pursuant to the fourth sentence of § 405(g),[6] premised on the contention that the ALJ's finding that he is suffering from diminished intellectual capacity secondary to ongoing alcohol abuse and that he would be functioning in the low borderline range if he were to stop abusing alcohol "is pure

---

[6] 42 U.S.C. § 405(g).

speculation and not supported by medical findings or other evidence in the record." (Doc. 9 at 11). Instead, he counsel asserts that the ALJ should have found that he is suffering from mild mental retardation and entitled to benefits. (*Id*.)  The Commissioner retorts that Hunt has failed to prove his impairments meet or equal a listed impairment. (Doc. 13 at 6).

    **A.**    **Disability**

        **1.**    **The Law**

It is well-settled that the plaintiff bears the burden of proving that he is disabled.  *See* 42 U.S.C. § 423(D)(5)(A); 42 U.S.C. § 1382c(a)(3)(H)(i); 20 C.F.R. § 404.1512(a), (c); 20 C.F.R. § 416.912(a) ("In general, you have to prove to us that you are blind or disabled.  This means that you must furnish medical and other evidence that we can use to reach conclusions about your medical impairment(s)."); 20 C.F.R. § 416.912(c) ("Your responsibility. You must provide medical evidence showing that you have an impairment(s) and how severe it is during the time you say that you are disabled.  You must provide evidence, without redaction, showing how your impairment(s) affects your functioning during the time you say that you are disabled, and any other information that we need to decide your claim."); *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) ("An individual claiming Social Security disability benefits must prove that she is disabled."); *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (stating that "the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim").

Congress amended the Social Security Act in 1997 to provide that a claimant "shall not be considered to be disabled for purposes of this subchapter if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that

the individual is disabled." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Pub. L. No. 104–121, § 105(a)(1), (b)(1), 110 Stat. 847, 852, 853 (codified as amended at 42 U.S.C. § 423(d)(2)(C) (1997)). Accordingly, if an ALJ determines that a claimant is disabled, but also determines that substance abuse is involved, he "must determine whether [the claimant's] drug addiction or alcoholism is a contributing factor material to the determination of disability." 20 C.F.R. §§ 404.1535(b)(1), 416.935(b)(1). The ALJ is required to determine which of the plaintiff's physical and mental limitations that supported the original disability determination would remain absent drug or alcohol use. 20 C.F.R. §§ 404.1535(b)(3), 416.935(b)(3). If the plaintiff would no longer be disabled if he stopped using drugs or alcohol, then the substance abuse is considered a "contributing factor material to the determination of [his] disability," and he has failed to meet his burden of showing that he is disabled. 20 C.F.R. §§ 404.1535(b)(2)(i), 416.935(b)(2)(i); 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J).

The ALJ determined in this instance that premised on Hunt's residual functional capacity ("RFC") and his impairments, including alcohol abuse and dependence and alcohol-induced psychoses, he would be disabled because he could not perform other work. (R. 27 (Finding 11)). He also determined, however, that if Hunt stopped abusing alcohol, he would have the RFC to perform the full range of light work. (R. 31 (Finding 17)).

  **2.**  **Discussion**

In addressing the present issue, it is necessary to begin with the definition of "intellectual disability"[7] under listing 12.05. 20 C.F.R. Part 404, Subpt. P, App.1, § 1205. It provides:

---

[7]The term "intellectual disability" replaced the term "mental retardation" on September 3, 2013. It does not affect the analysis of this matter. *See Change in Terminology*, *"Mental Retardation" to "Intellectual Disability,"* 78 Fed Reg. 46,499 (Aug. 1, 2013).

> Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
>     ....
>
> B.   A valid verbal, performance, or full scale IQ of 59 or less; OR
>
> C.   A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function....

*Id*. The introductory section to the mental disorders listings notes:

> The structure of the listing for intellectual disability (12.05) is different from that of the other mental disorder listings. Listing 12.05 contains an introductory paragraph with the diagnostic description for intellectual disability. It also contains four sets of criteria (paragraphs A through D). If [an] impairment satisfied the diagnostic description in the introductory paragraph and any one of the four sets of criteria, [the Commissioner] will find that [the claimant's] impairment meets the listing.

20 C.F.R. Part 404, Subpt. P, App.1, § 1200 (Introduction).

Dr. June Nichols, a licensed psychologist, evaluated Hunt on September 14, 2010, using the standard WAIS-IV evaluation and found that he had a "Full Scale IQ of 51." (R. 289-292). She concluded that his evaluation "results indicate that he is functioning in the Mild range of Mental Retardation." (R. 292). She also noted that his "ability to relate interpersonally and withstand the pressures of everyday work is moderately compromised due to the nature of his alcoholism, psychotic symptoms, and intellectual deficits." (R. 293). In contrast, Dr. Eugene E. Fleece, a State agency psychologist, reviewed Hunt's file and noted that Hunt "discharged his duties at a lumber company and a poultry plant for a combined 27 years despite his impairments." (R. 18). Further,

8

the ALJ noted that Dr. Fleece completed a psychiatric review technique form on October 1, 2010,

> on which he opined that the IQ scores that the claimant obtained when tested by Dr. Nichols are unexpectedly low for a man with 27 years of work experience. [Dr. Fleece] stated it is likely the claimant could have functioned as a lumber stacker and poultry hanger with considerably below average intellect, and he noted that we have no indication that the claimant has lost cognitive ability beyond what he mustered to maintain his long-term employment. Dr. Fleece wrote that the claimant's medically determinable impairments could reasonably be expected to produce some of his alleged symptoms and functional limitations, but that the claimant's statements about his symptoms and functional limitations are only partially credible, as the severity and limitations are not fully supported by the objective findings from the evidence in the file. He wrote that based on the claimant's 27-year employment history, he would estimate the claimant to have **low borderline cognitive functioning**. Dr. Fleece wrote that he would never have expected the claimant to have a Perceptual Reasoning Index Score of 56 and a Full Scale Intelligence Quotient Score of 51. [Dr. Fleece] wrote that perhaps the claimant's scores were suppressed by alcohol abuse, but that Dr. Nichols is known for much, much more severe than expected consultative examinations, base on a sample of hundreds of cases across many years, often with other data sources in the file. [Dr. Fleece] noted that the claimant's Full Scale IQ Score of 51 does not correspond with his own reported activities of daily living. [Dr. Fleece] noted that the claimant's reported visual hallucinations are usually associated with alcohol abuse, and that the claimant's auditory phenomena are not likely to be hallucinations at all. [Dr. Fleece] wrote that it is difficult to conclude that Dr. Nichols believed these IQs, because she gave only moderate limitations....

R. 18-19) (emphasis added). Dr. Richard S. Gross, another psychologist reviewer for the Social Security Administration, reviewed the forms completed by Dr. Fleece and agreed with his findings. (R. 20, 324).

The Commissioner argues that Hunt has failed to demonstrate a "valid IQ" establishing a diagnosis of intellectual disability as required to meet Listing 12.05B. (Doc. 13 at 10). The undersigned agrees. While Dr. Nichols did find that Hunt had an IQ of 51, that is not and cannot be the end of the discussion. The ALJ is charged with evaluating all the relevant expert opinions. *See* 20 C.F.R. §§ 404.1527, 416.927. In this case, he did just that.

9

The ALJ discounted Dr. Nichols' IQ determination that Hunt had mild retardation. (R. 23). In doing so, he relied on the opinion of Dr. Fleece, in which Dr. Gross concurred. Specifically, the ALJ relied on Dr. Fleece's conclusions that Nichols' opinions were inconsistent with Hunt's 27-year work history and his reported daily living activities, and her assignment of only moderate limitations concerning Hunt. (*Id*.) Each will be discussed separately.

First, with regard to Hunt's work history, as stated above, the ALJ noted Dr. Fleece's determination that Hunt's long work history was incongruent with Dr. Nichols' Full Scale IQ score of 51. The ALJ also noted that Dr. Fleece concluded that there was no reason to believe that Hunt has lost cognitive functioning "beyond what he mustered to maintain his long-term employment." (R. 18). The ALJ also noted that Dr. Fleece believed Hunt's intellectual capability was more consistent with low borderline cognitive functioning.

Second, with regard to Hunt's daily activities, the ALJ relied on Dr. Fleece's assessment that Dr. Nichol's IQ Score for Hunt of 51 did not comport with his reported activities of daily living. Specifically, while Hunt did report limitations in the activities of daily life due to some pain, there was no suggestion they were related to intellectual difficulties. Hunt does not need special reminders for personal care matters or the taking of medications. (R. 307). He reports that he is able to go outside, drive, shop, pay bills, count change,[8] read, watch television, interact with others, and finish assigned tasks. (R. 285, 307). He does not need to be accompanied when away from home and he does not need reminders or assistance in completing tasks.[9] (*Id*.)

---

[8] He did not "handle a savings account or checkbook." (R. 307). No further description or analysis of this was provided by Dr. Fleece.

[9] Dr. Fleece did note that Hunt ability to relate interpersonally and withstand the pressures of everyday work is moderately compromised due to the nature of his alcoholism, psychotic symptoms, and intellectual deficits. (R. 307).

Third, with regard to Dr. Nichols' determination that Hunt had only moderate limitations in view of his Full Score IQ of 51, Dr. Fleece notes that this suggests that she (Nichols) did not truly believe the scoring. (R. 293 & 307). While citing this portion of Dr. Fleece's opinion, there is no further discussion of the matter by the ALJ. It caused the ALJ to further question Hunt's IQ score and the opinion of Dr. Nichols. While Dr. Fleece's comment is noteworthy, it certainly is not the end all. It highlights the importance of reviewing the total record. which supports the ALJ's determination that Hunt is suffering from the "impairments of alcohol abuse and dependence; alcohol-induced psychoses; and low intellectual functioning secondary to ongoing alcohol abuse, evidenced by a full scale IQ of 51 while suffering from alcohol-induced psychoses, without evidence of deficits in adaptive functioning when he is not abusing alcohol." (R. 30). Similarly, the substantial evidence supports the ALJ's acceptance of the assessments of Drs. Fleece and Gross "that if [Hunt] were to stop abusing alcohol, he would likely be intellectually functioning in the low borderline range, and, therefore, ... the [Hunt's] ongoing alcohol abuse is a contributing factor material to the determination of his disability."[10]  (R. 30).

In sum, the determination of the ALJ is supported by substantial evidence. Hunt has not put forth evidence indicating that his impairments meet or exceed a listed impairment. More particularly, he has not demonstrated a valid IQ establishing a diagnosis of intellectual disability meeting Listing 12.05. Additionally, he has failed to show that he would have met or equaled a listing if he had stopped using alcohol. To the contrary, the record refutes this. Even Dr. Nichol's assessment of Hunt states that "[h]is ability to relate interpersonally and withstand the pressures of

---

[10]Hunt reported to Dr. James Richardson on August 14, 2010, that he "drinks a minimum of one case of beer each week." (R. 286). Similarly, he reported to the ALJ at his hearing that he drank about a case a week. (R. 62-63).

everyday work is moderately compromised due to the nature of his alcoholism, psychotic symptoms and intellectual deficits." (R. 293).

> **B.     Hunt's Request to Supplement the Record and Request for a Sentence Four and Sentence Six Remand**

Hunt also argues that the court should remand this matter under sentence six of 405(g) for the Commissioner to consider his school records from the Gadsden City Board of Education that were never submitted to the Appeals Council. *See* 42 U.S.C. § 405(g). (Doc. 9 at 12). The Commissioner retorts that Hunt's counsel request is due to be denied because counsel has not demonstrated the required good cause for the failure to produce the records at the administrative level. (Doc. 13 at 14).

Sentence six of section 405(g) provides the sole means for a district court to remand a case to the Commissioner to consider new evidence presented for the first time in the district court. It provides:

> The court may ... at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding ....

42 U.S.C. § 405(g). A remand to the Commissioner is proper under sentence six when new material evidence that was not incorporated into the administrative record for good cause comes to the attention of the district court. *Ingram v. Comm'r of Soc. Sec. Adm.*, 496 F.3d 1253, 1267 (11th Cir. 2007). The Eleventh Circuit Court of Appeals long ago stated that "the good cause requirement reflects a congressional determination to prevent the bad faith manipulation of the administrative process." *Milano v. Bowen*, 809 F.2d 763, 767 (11th Cir. 1987). The requirement was designed to "prevent claimants from attempting to withhold evidence" and to avoid the danger of encouraging

them to "seek after-acquired evidence, and then use such evidence as an unsanctioned 'backdoor' means of appeal." *Id.* (quoting *Szubak v. Secretary*, 745 F.2d 831, 834 (3d Cir. 1984)).

Hunt specifically argues that he has shown good cause for failing to present the additional records to the Appeals Council because his counsel attempted to locate the school documents in July 2012, while the appeal was pending. His were initially informed that the records might be too old to locate.[11] The records were located before the appeal was completed. The records, however, were not submitted to the Appeals Council because an oversight of counsel. The school records provide that Hunt's IQ test scores at the age of 14 indicated a Verbal IQ of 62, a Performance IQ of 65, and a Full Scale I Q of 59. (Doc. 9-3 at 2).

In view of the clear dictate from the Eleventh Circuit, this court must apply the good cause standard in this case. Neither procrastination nor oversight will support a finding of good cause. *See Caulder v. Bowen*, 791 F.2d 872, 879 (11th Cir. 1986) (procrastinating in obtaining evidence is not good cause); *Rosenkranz v. Social Sec. Admin.*, *Com'r*, 2013 WL 2108144, * 5 (N.D. Ala. May 15, 2013) ("an 'oversight' is not an appropriate basis to claim good cause"). In the present case, Hunt's counsel has failed to demonstrate why he waited until July 2012, after the ALJ entered his opinion, to pursue the school records that were available since the early 1980's. This is particularly noteworthy since the disability case had been pending two years before the request for the records was made. While the court is sympathetic to Hunt's situation, it cannot ignore clear Eleventh Circuit precedent requiring a showing of good cause.

---

[11]The court has credited the explanation of counsel even though it only appears in the brief, and not in the accompanying documents. (Compare Doc. 9 and 9-1).

## V.  CONCLUSION

For the reasons set forth above, the undersigned finds that Hunt's request for a sentence six remand be is due to be denied and the decision of the Commissioner is due to be **AFFIRMED**.  An order consistent with this determination will be entered.

**DONE**, this the 19th day of February, 2015.

*John E. Ott*
_____
**JOHN E. OTT**
Chief United States Magistrate Judge